IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2019 DEC 26  PM 12: 02

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

Case No.

MICHAEL LAWRENCE, an individual,

    Plaintiff,

v.

SOUTH SUBURBAN PARKS AND RECREATION DISTRICT,

    Defendant.

---

## COMPLAINT

---

1. The plaintiff is a natural person residing in Denver, Colorado.

2. The defendant is a political sub-division of the State of Colorado, providing recreational activities in the southern Denver area, including Arapahoe and Douglas Counties.

3. The plaintiff began employment with the defendant on or about April 15, 2018.

4. The defendant hired the plaintiff under the title, Lead Line Cook I, but effectively the plaintiff was the sous chef for the banquet kitchen at the Lone Tree Golf Club, located at 9808 Sunningdale Blvd., Lone Tree, Colorado.

5. The plaintiff has about ten years of experience as a restaurant cook. The plaintiff has much experience working in high volume restaurants.

6. The plaintiff worked for the defendant until on or about September 22, 2018. The plaintiff's employment with the defendant included work through the summer months of 2018, which are the busiest time of the year for the defendant's facility, the Lone Tree Golf Club.

7. For the entire summer of 2018, the chef and the plaintiff put together food that was often praised and never criticized. The plaintiff and the chef always got the food out on time and the food was pleasant in appearance and taste.

8. The plaintiff did work beyond the scope of his responsibilities in order to make the kitchen run smoothly, including doing inventory, costing recipes, and ordering food.

9.  Some of the servers at the defendant facility of Lone Tree Golf Club had worked there for over fifteen years. They had long experience with the banquet cooks and expressed their unreserved satisfaction with the plaintiff's work for the defendant.

10. The plaintiff and the chef worked consistently at a fast and productive pace. The plaintiff and the chef ran the kitchen with no other assistance throughout the summer. In the summer before the plaintiff worked for the defendant, the banquet kitchen had, upon belief and information, six cooks doing what the chef and plaintiff did alone in the summer of 2018.

11. The manager of the banquet kitchen, at all relevant times, was a woman named Caroline Bilodeau.

12. Upon belief and information, Ms. Bilodeau has little experience managing a restaurant kitchen.

13. Upon belief and information, Ms. Bilodeau was unable to recognize that the plaintiff and the chef were doing excellent work running the banquet kitchen.

14. Upon belief and information, Ms. Bilodeau could only see the plaintiff's age. Rather than letting the quality of the plaintiff's work speak for itself, Ms. Bilodeau stereotyped the plaintiff as being old and slow.

15. Ms. Bilodeau criticized the work of the chef, Nick Gust. Based on the plaintiff's conversations with Mr. Gust, Bilodeau's criticism of him caused him to give two-weeks' notice on or about September 2, 2018.

16. Mr. Gust was approximately 60 years old, upon belief and information.

17. On or about September 10, 2018, Ms. Bilodeau wrote up the plaintiff for working too slowly (a write-up is a disciplinary measure used by the defendant).

18. In response to the write-up, the plaintiff requested of Ms. Bilodeau that she find some discrete and objective criteria by which she could intelligently and accurately measure the quality of the plaintiff's work.

19. Ms. Bilodeau refused to set out discrete or objective criteria by which to measure the quality and speed of the plaintiff's work.

20. On or about September 21, 2018, Ms. Bilodeau criticized the plaintiff again for slowness for taking too long to perform a task she did not even know how to perform (and thus that she could not properly evaluate for how much time it might reasonably take).

21. Because Bilodeau did not know how long the task took that she criticized the plaintiff for taking too long to do, the plaintiff took Bilodeau's objection as pretextual, as preparation for a second write-up and ultimately for dismissal of the plaintiff.

22. The plaintiff met with the defendant's Human Resources representative on September 22, 2018 to complain about Bilodeau's treatment of the plaintiff and her apparent intent to terminate the plaintiff.

23. At the September 22, 2018 meeting between the plaintiff and the defendant's Human Resources representative, the defendant's Human Resources representative concluded she could not smooth out the disagreements between the plaintiff and Bilodeau.

24. At the September 22, 2018 meeting between the plaintiff and the defendant's Human Resources representative, the representative concluded the meeting by offering the plaintiff two weeks of wages to quit.

25. Recognizing Bilodeau was going to terminate the plaintiff no matter how hard he worked or how quickly or how well he worked, the plaintiff accepted the two weeks of wages and quit as a constructive discharge. The plaintiff did not want to quit, but he recognized Bilodeau would certainly fire him if he did not quit. Under the circumstances offered, at least the plaintiff was able to leave with two weeks of wages.

26. The defendant replaced the plaintiff and the 60-year-old chef with younger workers. The defendant never gave the plaintiff a fair evaluation of his work, treating him badly and unfairly for his advanced age, even though the plaintiff's age never hindered the high quality of his work for the defendant.

27. The defendant violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. by evaluating the plaintiff's work with arbitrary and capricious standards that were a pretext for age-based discrimination.

28. At all times relevant to this matter, the plaintiff was 56 years old, and thus was at all times a protected person under the ADEA.

29. The defendant took negative employment actions against the plaintiff solely because of his age. The defendant did this by writing up the plaintiff and by complaining about the plaintiff's work speed, despite the fact that the kitchen worked very productively and with high quality during the plaintiff's tenure at the defendant's kitchen.

30. Objectively, it was clear the plaintiff worked quickly and productively. One could see that by the fact that the kitchen ran smoothly with the plaintiff and with Mr. Gust by themselves doing the same amount of work that six cooks had done the summer before.

31. The defendant's employee, Bilodeau, was unhappy with the plaintiff's work for the defendant based solely on his age and her stereotyped expectation that the plaintiff would be slow, and in spite of his actual and objective speed at work.

32.     The defendant, through its agent, Bilodeau, showed clear intent to terminate the plaintiff involuntarily based pretextually on his lack of speed, but in fact based on nothing more than his age.

33.     The defendant's actions in constructively discharging the plaintiff for being slow—despite his objective celerity—had an age-based and discriminatory effect on the plaintiff, in violation of the ADEA.

34.     The defendant refused to consider promoting the plaintiff to chef after Mr. Gust resigned because the defendant did not want an old person to act as chef. The plaintiff lost prospective economic advantage from that decision by the defendant.

35.     The plaintiff experienced a loss of two months of wages after his termination from the defendant because it took two months for the plaintiff to find a job to replace the job he had at the defendant.

36.     The plaintiff has earned less in terms of benefits since his termination from the defendant because of the defendant's violation of the ADEA.

37.     The plaintiff suffered emotion distress from the defendant firing him based on his age.

38.     The plaintiff gave a timely notice of intent to sue the defendant by certified mail, return receipt requested, on March 18, 2019.

39.     On or about February 14, 2019, the plaintiff made a formal charge against the defendant for violation of the ADEA with the Denver Equal Employment Opportunity Commission office in Denver, Colorado.

40.     On or about September 27, the Denver EEOC office mailed a right to sue letter to the plaintiff. The plaintiff has thus exhausted his administrative remedies.

WHEREFORE, the plaintiff seeks to recover for economic damages from lost wages, lost benefits, lost prospective advantage, and emotional damages, in an amount to be determined at trial.

DATED this 26th day of December, 2019

*Michael Lawrence*
Michael Lawrence
8330 E Quincy Ave, Apt H209
Denver, CO 80237
Tel. 720-231-2023
Email: mlawrencellc@msn.com